UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| MATTHEW SOUTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. #1:20-cv-1295 (TSE/JFA) |
| | ) |
| C. T. IRBY, *et al.* | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON LIABILITY

Introduction

Matthew Souter is the owner and landlord of an old farmhouse in The Plains, Virginia. Mr. Souter issued one of his tenants, Melissa Johnson, a notice to quit for various violations of the lease agreement. After Ms. Johnson received this notice, she secured an *ex parte* emergency protective order (EPO) against Mr. Souter issued pursuant to *Code of Va.* §19.2- 152.8. The order provided that Mr. Souter could not commit "acts of violence, force, or threat or criminal offenses" resulting in injury to Ms. Johnson or her property. Defendants Fauquier County Deputy Creston Irby and Corporal Andrew McCauley served the order on Mr. Souter that day, without incident.

The next day, Ms. Johnson called the Fauquier County Sheriff's Office, claiming that Mr. Souter had terminated the electricity to her bedroom and the water to her bathroom and thereby violated the EPO. She spoke to Dep. Jordan White. Dep. White tried to reach Mr. Souter by

phone, without success, but did not otherwise pursue the matter. Later that day, Ms. Johnson called the Sheriff's Office again. This time she reached defendant Deputy L. E. Jacobs, to whom she made the same complaint she had made to Dep. White. Deputy Jacobs did not try to contact Mr. Souter. Instead, he secured a copy of the EPO, read it, and brought it to the local magistrate to secure an arrest warrant on a finding that the alleged disruption of Ms. Johnson's utilities amounted to a criminal breach of the protective order. No one apparently bothered with the fact that – unlike preliminary family protective orders under issued under *Code of Va.* §16.2-253, which address, *inter alia,* the provision of utilities – *ex parte* EPOs issued under *Code of Va.* §19.2- 152.8, addressing solely threats and violence, do nothing of the sort.[1] The magistrate issued a warrant for Mr. Souter's arrest for violating the EPO.

Deputies Irby and Jordan and Cpl. McCauley, all of whom conceded knowledge of EPOs generally and the one against Mr. Souter in particular, thereupon went to Mr. Souter's home and arrested him for violation of the EPO. This lawsuit followed, seeking damages for his false arrest and the deputies' use of excessive force in effecting it. Mr. Souter now seeks summary judgment on liability on the issue of his arrest without probable cause and his resulting injuries, under circumstances in which qualified immunity is unavailable to the arresting officers.

---

[1] Virginia magistrates need not be lawyers. *Graham v. Gagnon,* 831 F.3d 176, 183 n.3 (4th Cir. 2016). There is no record of Magistrate C. M. Harding, who issued the arrest warrants here at issue, ever having been a member of the Virginia Bar.

Statement of Undisputed Material Facts

1. Matthew Souter is the owner of a farm house located at 7353 John Marshall Highway in The Plains, Virginia. The house is over 100 years old. It has outdated and unreliable electrical wiring and plumbing. Circuit breakers routinely flip off when inappropriate loads are placed on the system. Exh. 1, ¶1.

2. Mr. Souter rents rooms in his farmhouse to tenants. They are not supposed to use unapproved electrical devices in their rooms, so as not to cause problems with electricity in the house. *Id.* ¶2.

3. For a period of time in 2018, Mr. Souter rented a room to one Melissa Johnson. Ms. Johnson proved to be a troublesome tenant. Mr. Souter did not approve having her cat, that she told him had feline AIDS, in the kitchen. Ms. Johnson used a hotplate in her room, which flipped the circuit breaker serving that room and adjoining parts of the house. She was also verbally abusive. In November 2018, Mr. Souter gave her notice to quit. *Id.* ¶3.

4. In November 2018, the bathroom nearest to the room rented to Ms. Johnson could not be used. The toilet was unstable and had to be disconnected. Ms. Johnson was free to use, and did use, the other bathrooms in the house, as did the other two tenants. *Id.,* ¶4.

5. On November 9, 2018, Ms. Johnson secured an EPO against Mr. Souter pursuant to Va. Code §19.2- 152.8. Deputy Irby and Corporal McCauley served it on Mr. Souter that day.[2]

---

[2] Ms. Johnson, who accused Mr. Souter of threatening her, secured her EPO *ex parte*. Mr. Souter learned of the accusation and of the order when it was served on him. For the record, Mr. Souter denies having threatened Ms. Johnson. His denial is immaterial to the pending motion, as he concedes that Ms. Johnson obtained the EPO based on her claim.

6. The EPO ordered that Mr. Souter "not commit acts of violence, force, or threat or criminal offenses resulting in injury to person or property." The EPO defined "act of violence, force, or threat" as "any act involving violence, force or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury." Ex. 2 at 1, 2. Cpl. McCauley explained the requirements of the order to Mr. Souter, Exh. 3 at 28:6-22, in the presence of Dep. Irby, who heard his explanation. Exh. 4 at 22:12-21. Mr. Souter also read the order and understood it and its terms. Exh. 1 ¶6.

7. Pending Ms. Johnson's departure from his home, Mr. Souter determined to stay as far away as possible from her, so as not to be charged with engaging in violence against her or placing her in apprehension of injury. Exh. 1 ¶7.

8. On November 10, 2018, Ms. Johnson called the Fauquier County Sheriff's Office and spoke to Dep Jordan White. She claimed that Mr. Souter had terminated the electricity to her bedroom and the water to her bathroom, in violation, she believed, of the EPO. Dep. White tried to reach Mr. Souter by phone, without success, but did not otherwise pursue the matter. Not being able to reach Mr. Souter, Dep. White classified the complaint as a civil matter.[3] Exh. 5 at 11:16-20.

9. The same day, Ms. Johnson called the Fauquier County Sheriff's office again. She complained to Dep. Jacobs that Mr. Souter had terminated the electricity to her bedroom and the

---

[3]Dep White explained why he sought Mr. Souter's explanation before taking any action. "[I]t could be 1,000 different reasons why [the power was out], but I like to -- to do the full portion of the investigation to try to figure out why the power is out and to talk to the landlord about that." *** "I was trying to get a civil agreement to have the power restored." Exh. 5 at 13:12-15; 15:21-16:1. As noted, Mr. Souter's house is an old farmhouse with outdated and often malfunctioning utility fixtures.

water to her bathroom, amounting, she believed, to a violation of the EPO. Exh. 6 at 44:3-45:5-17.[4]

10. Deputy Jacobs "cannot recall" whether he called Mr. Souter to speak with him about Ms. Johnson's allegations. Exh. 6 at 79:14-80:4.[5]

11. Dep. Jacobs obtained a copy the protective order secured by Ms. Johnson. He read it and understood it. Exh. 6 at 50:17-19.

12. Dep. Jacobs proceeded to apply for and receive an arrest warrant for Mr. Souter for having allegedly violated the EPO by allegedly turning off Ms. Johnson's utilities. Exh.6 at 51:14-18[6]

13. Dep. Irby and Cpl. McCauley assisted Dep. Jacobs in executing the arrest warrant. Exh. 6 at 115:12-15.

14. When Mr. Souter was arrested, he was wrestled to the ground by all three deputies: one on each side and one at his front and then on top of him. His face was injured and he had to be taken to Fauquier Hospital's Emergency Room for treatment. Exhibit A hereto is a still shot

---

[4]For the record, Mr. Souter denies having turned off any of Ms. Johnson's utilities. That said, he does not present his denial as a fact material to his motion. Mr. Souter does not dispute that Ms. Johnson so informed the deputies and that they acted, wisely or (as he contends) rashly, based on Ms. Johnson's allegation.

[5]Dep. Jacobs testifies that making note of an attempted telephone contact with Mr. Souter was "something I would document in [his incident report] . . . but it's not in my report that I had attempted to." Exh. 6 at 79:5-7.

[6]Virginia law and forms address two distinct kinds of protective orders: against family members on allegations of family abuse (*see Code of Va.* §16.1-253 *et seq.*) and against all others (*see Code of Va.* §19.2-152.8). Dep. Jacobs received, and all the defendants executed, an arrest warrant issued for an alleged violation of *Code of Va.* §16.1-253.4, Exh. 7, notwithstanding that the protective order at issue was not issued under this statute. Exh. 2. This error by three deputies professing knowledge of protective orders exemplifies the disorderly nature of the law enforcement actions here at issue.

from a video of Mr. Souter in the hospital bed as he was getting treatment shortly after having been arrested. Exh. 1 ¶13.

Standard of Review

Summary judgment is properly granted if the movant is entitled to judgment as a matter of law on the basis of the material undisputed facts, with facts construed and reasonable inferences drawn in favor of the party opposing the motion. Fed. R. Civ. P. 56.  The Court has an "affirmative obligation" to "prevent factually unsupported claims and defenses from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Discussion

Mr. Souter did not violate the terms of the EPO.  Deputy Jacobs should not have solicited or obtained an arrest warrant based on Ms. Johnson's complaint about utilities, and he and Deputy Irby and Corporal McCauley should not have arrested Mr. Souter based on that complaint.  The EPO ordered that Mr. Souter "not commit acts of violence, force, or threat or criminal offenses resulting in injury to person or property," and expressly defines act of violence, force, or threat as "any act involving violence, force or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury."  Exh. 2 at 1, 2, Nothing remotely of the sort was alleged by Ms. Johnson.

Textual analysis is, properly, the initial driver of legal analysis. "As usual, we start with the statutory text." *Tanzin v. Tanvir*, 141 S. Ct. 486, 489 (2020) (text of Religious Freedom Restoration Act dispositive over contrary arguments). This rule has been deemed unavoidable even in cases reaching judicial conclusions that would concededly have surprised those who crafted the language construed: "[T]he limits of the drafters' imagination supply no reason to ignore the law's demands. When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1737 (2020) (Title VII of the Civil Rights Act of 1964 forbids discrimination based on sexual orientation or transgendered status notwithstanding that "[t]hose who adopted the Civil Rights Act might not have anticipated their work would lead to this particular result.") Just days ago the Supreme Court has reaffirmed the primacy of statutory language, even in the face of potent countervailing arguments:

> To decide whether an offense satisfies [as a violent felony], courts use the categorical approach. Under that by-now-familiar method, applicable in several statutory contexts, the facts of a given case are irrelevant. The focus is instead on whether the elements of the statute of conviction meet the federal standard. Here, that means asking whether a state offense necessarily involves the defendant's "use, attempted use, or threatened use of physical force against the person of another." If any—even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as an [Armed Career Criminal Act] predicate.

*Borden v. United States,* 593 U. S. ____ (2021) (citations omitted).

As noted above, Mr. Souter's EPO was issued under *Code of Va.* §19.2-152, addressing emergency protective orders addressed to a non-family member. That statute does not address

the provision or termination of utilities. The latter are, however, addressed in *Code of Va*. §16.1-253.1, providing for preliminary (not emergency) protective orders in cases of family abuse. Unlike the former statute, the latter one specifies "enjoining the respondent from terminating any necessary utility services" as one of several available remedies. Mr. Souter was served with no such order.

It is settled that the law must give clear notice of what will be considered a criminal offense. "We must be certain that [statutory] language clearly identifies the act which is rendered a trespass of the law. '[I]n the interest of providing fair warning of what the law intends to do if a certain line is passed, we will construe . . . criminal statute[s] strictly and avoid interpretations not clearly warranted by the text.'" ) *United States v. Cone,* 714 F.3d 197, 206 (4th Cir. 2013); *accord, United States v. Davis,* 98 F. 3d 141, 144 (4th Cir. 1996). A prohibition on committing "acts of violence, force, or threat or criminal offenses resulting in injury to person or property" provides no warning that the hypothesized termination of water or electricity to a tenant falls within such prohibition.

These settled principles of statutory construction have only recently been applied to Virginia EPOs. In *Marshall v. Marshall,* No. 3:20cv442 (DJN), 2021 WL 785090 at *8 (E.D. Va., Mar. 1, 2021), a police officer solicited and received an EPO providing, *inter alia* for the expulsion of an alleged abuser for several days from the house owned by her and her husband, her alleged victim. At the time the officer secured the order, he knew that the husband was not at home, but in the hospital some miles away, and not anticipated to return home during the pendency of the EPO. The wife sued the officer, as well as private parties who had secured the officer's involvement (one of them a sitting Hanover Circuit Court judge), for having evicted her

from her home and seizing her house key. Reviewing the relevant code provision and the standard terms of the Virginia EPO, the court found that it was improper to seek and then execute an order to remove the wife from her home or seize her key "Nothing in these facts suggests that Plaintiff's removal from her home, even for a brief period of time, was necessary to secure the safety and health of her husband." *Id.* at *3. Finding that it was a "clearly established violation of the Fourth Amendment to evict a private citizen from their home pursuant to a facially deficient order" the court declined to extend qualified immunity to the officer. *Id.*

Focus on the relevant language of the EPO statute and the EPO served on Mr. Souter leads to the same conclusion here. Assuming, counter-factually, that Mr. Souter had turned off the electricity or water to Ms. Johnson's accommodations, none of this qualified as an "act[] of violence, force, or threat or criminal offenses." Arresting Mr. Souter for having allegedly done so amounted to an arrest without probable cause. A reasonably competent law enforcement officer "should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). And the plain language of dispositive legal authority is sufficient to inform an officer what may and may not be done under its authority. *Sevigny v. Dicksey,* 846 F.2d 953, 957 (4th Cir. 1988); *Merchant v. Bauer*, 677 F.3d 656 (4th Cir. 2012). And since no amount of force is permissible to effect an arrest in violation of the Fourth Amendment, the court should rule that defendants are liable for such injuries as Mr. Souter suffered in the course of his arrest.[7]

---

[7] Any contention that Ms. Souter's injuries arose from his resisting his arrest is meritless. An unlawful arrest is an unauthorized touching, and thus a battery against the attempted arrestee. *McCracken v. Commonwealth*, 39 Va. App. 254, 269–70, 572 S.E.2d 493, 500–01 (2002). When an arrest is unlawful, the subject enjoys "the right to resist upon self-defense principles. The Commonwealth cannot expunge that right even by showing the officers acted in 'good faith.'" *Brown v. Commonwealth*, 27 Va. App. 111, 118, 497 S.E.2d 527, 530 (1998). The "'provocation' of an illegal arrest . . . operates to excuse an assault directed at thwarting the

Conclusion

For these reasons, the court should find that defendants lacked probable cause to arrest Mr. Souter, and that the plain language of the governing statute and the EPO itself precludes their claiming that a reasonably trained deputy would not have realized there was no probable cause for the arrest.  On this basis, the court should grant summary judgment on liability to Mr. Souter on his federal and state claims of false arrest, and set the case down for proof of damages on these claims.  And since no amount of force is permissible to execute an unconstitutional arrest, the court should also grant Mr. Souter summary judgment on liability on his excessive force and battery claims, and set those claims down as well for proof of damages.

    Respectfully submitted,

    MATTHEW SOUTER,

    By counsel

Dated:   June 14, 2021

Counsel for Plaintiff:

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Nickera S. Rodriguez, #95952
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com
nsr@robinhoodesq.com
SouterMatthew\Pleadings\2021-0614-MemMSJLiability

---

unlawful arrest." *Commonwealth v. Hill*, 264 Va. 541, 546–47 (2002).

Certificate of Service

    I, Victor M. Glasberg, hereby certify that on this 14th day of June 2021, I electronically filed the foregoing Memorandum in support of Motion for Summary Judgment on Liability with the clerk of the court.

    //s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com

Counsel for Plaintiff