IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MATTHEW SOUTER, )<br>Plaintiff, )<br> )<br>v. )<br> )<br>C.T. IRBY, *et al.*, )<br>Defendants. ) | Civil Action No. 1:20-cv-1295 |

## MEMORANDUM OPINION

In this action, Plaintiff Matthew Souter sues three police officers employed by the Fauquier County Sheriff's Office, alleging three constitutional torts and three Virginia state law claims, all arising out of Plaintiff's arrest on November 10, 2018. Specifically, Plaintiff asserts three constitutional torts against the police officers for (i) unlawful arrest, (ii) unreasonable seizure, and (iii) excessive use of force, all in violation of Plaintiff's rights under the Fourth Amendment and 42 U.S.C. § 1983. In addition, stemming from the same event of Plaintiff's arrest, Plaintiff sues the defendant officers for Virginia state law claims of (i) false arrest, (ii) malicious prosecution, and (iii) assault and battery. The parties have filed cross-motions for summary judgment, which have been fully briefed and were orally argued, and are now ripe for disposition.

I.

A grant of summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Rule 56(A), Fed. R. Civ. P. In this respect, Local Rule 56(B) directs a party seeking summary judgment to include in the summary judgment submission a specifically captioned section listing in enumerated paragraphs the material facts as to which the moving party contends

1

no genuine dispute exists and to provide citations to the factual record supporting the listed facts. Local Rule 56(B) further instructs a party opposing summary judgment to address each enumerated undisputed fact and to state whether the fact is disputed or admitted and, if disputed, to provide citations to admissible evidence in the record supporting the claim of a factual dispute. The parties have substantially complied with Local Rule 56(B), and thus the following are the undisputed material facts derived from the parties' submissions.

- Plaintiff owns a farmhouse located in The Plains, Virginia. Plaintiff rents rooms in his house to tenants.

- In November 2018, Plaintiff rented a bedroom and bathroom in his home to Melissa Johnson. During the course of Johnson's tenancy, Plaintiff and Johnson had disputes related to Johnson's cat and Johnson's use of an electric hotplate.

- On November 9, 2018, Johnson filed an *ex parte* complaint stating that Plaintiff had threatened her. As a result of that complaint, Johnson obtained an Emergency Protective Order ("EPO") against Plaintiff. The EPO was issued pursuant to Va. Code § 19.2-152.8. The EPO states that Plaintiff "shall not commit acts of violence, force, or threat or criminal offenses resulting in injury to person or property" of Johnson. Dkt. 24-2 at 1. The EPO further defines "acts of violence, force, or threat" as "any act involving violence, force or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury." *Id.* at 2.

- On November 9, 2018, the same day the EPO issued, Defendants Deputy Irby and Corporal McCauley visited Plaintiff and served Plaintiff with a copy of the EPO. Irby, McCauley, and Plaintiff all reviewed the EPO and McCauley explained the terms of the EPO to Plaintiff.[1]

- The following day, November 10, 2018, Johnson called the Fauquier County Sheriff's Office and reported that Plaintiff had violated the EPO by terminating the electricity and water service to Johnson's bedroom and bathroom. Johnson spoke with Deputy Jordan White, who is not named as a defendant in this case. White made a written record of Johnson's complaint, classifying the complaint as a "civil matter." Dkt. 24-5 at 2.

- Later that day, Johnson again called the Fauquier County Sheriff's Office and repeated her complaint that Plaintiff had violated the EPO by terminating electricity and water to

---

[1] McCauley testified at his deposition that he "remember[ed] reading the protective order over with Mr. Souter, explaining it to him." Dkt. 24-3 at 2. Likewise, Irby testified at his deposition that he saw the EPO as McCauley served it on Plaintiff and that he was present when McCauley explained the terms of the EPO to Plaintiff. Dkt. 24-4 at 2.

2

Johnson's bedroom and bathroom. This time, Johnson's complaint was handled by Defendant Deputy Jacobs.

- Jacobs obtained a copy of the EPO issued against Plaintiff and reviewed the EPO and its terms. Jacobs erroneously determined that, based on Johnson's complaint that Plaintiff had terminated electric and water service to her bedroom and bathroom, Plaintiff had violated the EPO. Accordingly, Jacobs applied for a warrant to arrest Plaintiff

- In support of Jacobs' request for an arrest warrant, Jacobs completed a criminal complaint against Plaintiff. In doing so, Jacobs erroneously stated that Plaintiff had violated provisions of Va. Code § 16.1-253.2, a statute unrelated to the issuance of the EPO against Plaintiff. Section 16.1-253.2 pertains to emergency protective orders in cases of family abuse and thus this Section has no application to the EPO issued against Plaintiff. Dkt. 34-5.

- After reviewing the complaint Jacobs had written, the magistrate issued the arrest warrant. *See* Dkt. 26-1. Relying on what Jacobs had erroneously written in the criminal complaint, the arrest warrant repeated this same error, in that the warrant charged Plaintiff with violating "a provision of a protective order issued pursuant to 16.1-253.4," in "violation of § 16.1-253.2." *Id.* There is no evidence in the record that a protective order under § 16.1-253.4 had ever been issued against Plaintiff, and thus the arrest warrant stated Plaintiff had violated a protective order which did not exist.

- McCauley, who worked as Jacobs' supervisor, consulted with Jacobs throughout Jacobs' handling of Johnson's complaint and the procurement of the arrest warrant for Plaintiff. McCauley had served Plaintiff with the EPO and explained the terms of the EPO to Plaintiff.

- The defendant officers, McCauley, Irby, and Jacobs, all went to Plaintiff's house in order to serve the arrest warrant on Plaintiff and arrest Plaintiff. Prior to their arrival at Plaintiff's house, all three officers knew both (i) the terms of the EPO issued against Plaintiff and (ii) the fact that Johnson's complaint against Plaintiff was the stated basis of the arrest warrant. Accordingly, all three officer defendants knew or reasonably should have known that there was no valid basis for the issuance of a warrant against Plaintiff because Plaintiff was not alleged to have engaged in any acts of threat, force, or violence in violation of the EPO and because the statute cited by Jacobs in support of the warrant was inapplicable to Plaintiff. Specifically, the defendant officers knew or reasonably should have known that the criminal complaint provided by Jacobs erroneously claimed Plaintiff violated a statute that was unrelated to the EPO issued against Plaintiff and thus inapplicable to Plaintiff.

- The defendant officers arrived at Plaintiff's home and informed Plaintiff that he was under arrest. Plaintiff resisted arrest and did not permit the officers to handcuff him. The officers then wrestled Plaintiff to the ground, while Plaintiff continued to resist the officers. McCauley then used a taser to subdue Plaintiff. After Plaintiff was tased, the officers were able to handcuff Plaintiff.

3

- Plaintiff sustained injuries during his arrest, and Plaintiff's head was bleeding after his arrest. Due to his injuries, Plaintiff was transported to Fauquier Hospital after his arrest for treatment in the emergency room.

- Plaintiff later went to trial for the criminal charges related to the EPO violation. A charge for violating the EPO was dismissed on a *nolle prosequi* and Plaintiff was found not guilty of attempting to flee from a law enforcement officer.

### III.

The summary judgment standard is too well settled to require extensive elaboration. Summary judgment is appropriate only when there is "no genuine issue as to any material fact" and based on those undisputed facts the moving party "is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(c) (explaining that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."). To serve as a bar to summary judgment, facts must be "material," which means that the disputed facts "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, at the summary judgment stage, courts must "view the evidence in the light most favorable to . . . the non-movant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

### IV.

The analysis in this case properly begins with consideration of Plaintiff's motion for summary judgment. Plaintiff first raises three constitutional tort claims against the defendant officers, pursuant to 42 U.S.C. § 1983, including (i) unlawful procurement of an arrest warrant against Jacobs, (ii) unreasonable seizure against Jacobs, McCauley, and Irby, and (iii) excessive force against Jacobs, McCauley, and Irby. As the Supreme Court has explained, "[t]he very

4

purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). And as the Fourth Circuit has instructed, "Section 1983 provides that every person, who, under color of state law causes the violation of another's federal rights shall be liable to the party injured by his conduct." *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014). Accordingly, if the officer defendants violated Plaintiff's constitutional rights, then Plaintiff is entitled to summary judgment and the defendant officers may be subject to civil liability under § 1983.

The undisputed factual record conclusively demonstrates that the defendant officers made two principal errors in the course of seeking an arrest warrant for Plaintiff and executing that arrest warrant against Plaintiff. First, the defendant officers plainly erred in concluding that the conduct Johnson complained of—namely, termination of water and electricity to Johnson's bedroom and bathroom—constituted an act of violence in violation of the EPO issued against Plaintiff. The conduct Johnson complained of did not violate the EPO. On its face, the EPO issued against Plaintiff prohibited Plaintiff from committing "acts of violence, force, or threat or criminal offenses resulting in injury to person or property." Dkt. 24-2 at 1. The EPO further defined acts of violence, force, or threat, to include "forceful detention, stalking, criminal sexual assault…or any criminal offense that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury." *Id.* at 2. Given this definition in the EPO, it is clear that the conduct Johnson complained of—*i.e.* that Plaintiff had cut off electricity to Johnson's bedroom and cut off water service to her bathroom—did not constitute acts of violence in violation the EPO and thus the conduct Johnson complained of plainly did not violate

the EPO. All three defendant officers had knowledge of the terms of the EPO,[2] and clearly knew or should have known that termination of water and electricity did not violate the EPO. Thus, the defendant officers plainly erred in their conclusion that Plaintiff had violated the EPO.

Second, the defendant officers compounded their error in concluding that Plaintiff's termination of water and electricity was "an act of violence" in violation of the pertinent EPO. They did so by seeking an arrest warrant for Plaintiff unsupported by probable cause and citing in support of that arrest warrant a statute inapplicable to Plaintiff and the EPO. The defendant officers knew or should have known that there was no probable cause for the issuance of an arrest warrant for Plaintiff for a violation of Va. Code § 16.1-253.4, because that statute is unrelated to the EPO issued against Plaintiff. The EPO against Plaintiff was issued pursuant to Va. Code § 19.2-152.8, which governs general protective orders for victims "subjected to an act of violence, force, or threat." Va. Code § 19.2-152.8. But the criminal complaint drafted by Jacobs, as well the arrest warrant issued by the magistrate on the basis of the complaint drafted by Jacobs and enforced by all three defendant officers, charged Plaintiff with a violation of different statute, namely Va. Code § 16.1-253.4, which deals with EPOs issued under Virginia's family violence laws. *See* Dkt. 26-1. There is no evidence in the record of an EPO issued against Plaintiff pursuant to § 16.1-253.4, and accordingly even if Plaintiff *had* violated the EPO (which he did not), such violation could not support an offense under § 16.1-253.4, because § 16.1-253.4 is unrelated to the EPO issued in this case. Thus, the defendant officers erred in executing an arrest warrant which the defendant officers knew or should have known charged Plaintiff with violating an EPO which had never been issued. The officer defendants, who all had knowledge

---

[2] *See* Dkts. 34-1 at 2-3 (McCauley testifying that he knew what the EPO prohibited and did not prohibit), 24-4 at 2 (Irby testifying that he was present when McCauley summarized the EPO's terms to Plaintiff), 34-3 at 2 (Jacobs stating that he read the EPO before seeking an arrest warrant from the magistrate).

6

of the EPO and of the arrest warrant, should have known that the statute identified in the arrest warrant did not match the statute under which the EPO was issued and that Plaintiff's arrest was therefore unlawful.

The question remains of course, whether these errors by the defendant officers give rise to civil liability under § 1983 and require the entry of summary judgment in Plaintiff's favor. The analysis of Plaintiff's constitutional tort claims properly begins with a determination of whether there was probable cause for Plaintiff's arrest. If the defendant officers reasonably believed that probable cause supported Plaintiff's arrest, then they may not be civilly liable under § 1983. In *Graham v. Gagnon*, 831 F.3d 176, 182 (4th Cir. 2016), the Fourth Circuit explained that in § 1983 cases involving allegations of unlawful procurement of an arrest warrant, the constitutional right at issue "is not the general right to be free from arrest without probable cause, but rather the right to be free from arrest under the particular circumstances of the case." Law enforcement officials may be civilly liable under § 1983 "if it would have been clear to reasonable officers in their position that they lacked probable cause to arrest" Plaintiff for violating the cited law. *Id.* Thus, the defendant officers' liability turns on the objective reasonableness of the officers' conclusion that there was probable cause to arrest Plaintiff under Va. Code § 16.1-253.2. The defendant officers' conclusion that there was probable cause to arrest Plaintiff cannot be said to be objectively reasonable in the circumstances of this case.

Probable cause is determined by considering the "totality-of-the-circumstances" present in a case. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Importantly, the probable cause analysis properly asks whether the defendant officers were *reasonable* in their probable cause determination, not whether the defendant officers were actually *correct* in their probable cause determination. As the Fourth Circuit has instructed, "[i]f the probable cause determination,

though mistaken, was nevertheless objectively reasonable, the officer should enjoy immunity." *Graham*, 831 F.3d at 184. But if the defendant officers made a mistake that was objectively unreasonable in light of the factual circumstances, then the defendant officers may be civilly liable for their unreasonable mistake. *See id.*

The existence of probable cause in a given situation "always turns on two factors in combination: [1] the suspect's conduct as known to the officer, and [2] the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). In considering the first factor in the probable cause analysis—that is, the suspect's conduct as known to the officers—"[a] court should only consider the information the officers had at the time they sought the warrant." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017). There is no dispute in this case as to what the officers knew about Plaintiff's conduct.[3] The officers clearly knew that Johnson had obtained an *ex parte* EPO against Plaintiff which was issued pursuant to Va. Code § 19.2-152.8. That EPO prohibited Plaintiff from committing "acts of violence, force, or threat" against Johnson. Dkt. 24-2 at 1. The officers also knew that, one day after the EPO was issued, Johnson complained to officers that Plaintiff had cut off water and electric service to Johnson's bedroom. The officers do not identify any fact in the record, however, that provides a reasonable basis for the officers to have concluded that Plaintiff had engaged in acts of violence, force, or threat against Johnson. Thus, the factual record is clear that the defendant officers had no reason to believe that Plaintiff had violated the EPO, and the defendant officers' conclusion to the contrary was clearly erroneous.

The second factor of the probable cause analysis requires an examination of the statute

---

[3] Plaintiff maintains that he did not, in fact, terminate water or electricity to Johnson's bedroom. But Plaintiff concedes that, for the purpose of summary judgment, Plaintiff's actual actions are immaterial. The probable cause determination turned on what the defendant officers believed Plaintiff had done, not what, if anything, Plaintiff had actually done.

8

under which the plaintiff was arrested to determine if that statute reasonably could be construed to cover the plaintiff's alleged conduct. *See Graham*, 831 F.3d at 186. The complaint prepared by Jacobs indicated that Plaintiff had violated Va. Code. § 16.1-253.2, and the arrest warrant issued by the magistrate charged Plaintiff with violating that same statute. *See* Dkts. 26-1 (arrest warrant), 34-5 (criminal complaint). Section 16.1-253.2, titled "Violation of provisions of protective orders; penalty" applies to "any person who violates any provision of a protective order issued pursuant to § 16.1-253, 16.1-253.1, 16.1-253.4, 16.1-278.14, or 16.1-279.1 or subsection B of § 20-103." Va. Code. § 16.1-253.2. Further, § 16.1-253.2 applies only when the EPO allegedly violated "prohibits such person from (i) going or remaining upon land, buildings, or premises; (ii) further acts of family abuse; or (iii) committing a criminal offense, or which prohibits contacts by the respondent with the allegedly abused person." *Id.*

An examination of the statute's plain text makes clear that the statute could not reasonably be read to apply to Plaintiff's alleged conduct. The statute Plaintiff allegedly violated applies only in cases where a protective order had been "issued pursuant to § 16.1-253, 16.1-253.1, 16.1-253.4, 16.1-278.14, or 16.1-279.1 or subsection B of § 20-103." Va. Code. § 16.1-253.2. No such protective order had issued against Plaintiff, as the EPO issued in this case explains on its face that it was issued pursuant to Va. Code § 19.2-152.8. Thus, Plaintiff's alleged conduct plainly did not constitute a violation of § 16.1-253.2 and defendant officers had no reasonable basis to believe that there was probable cause to arrest Plaintiff.

Even assuming *arguendo* that the EPO issued against Plaintiff had been issued pursuant to one of the sections covered by § 16.1-253.2, Plaintiff's alleged acts (i.e. termination of electric and water service to Johnson's bedroom and bathroom) do not constitute an act of violence as defined in the EPO, and thus Plaintiff's alleged conduct could not have served as a

9

predicate for an arrest warrant. It is clear, therefore, that Plaintiff's alleged conduct did not constitute a violation of Va. Code. § 16.1-253.2, as the plain text of that statute confirms. As the Fourth Circuit has made clear, "[t]he boundaries of the statute [supporting arrest] are extremely relevant to an assessment of whether a mistake was reasonable." *Graham*, 831 F.3d at 188. And in this case, the scope of the statute makes clear that Plaintiff's alleged conduct could not have led a reasonable law enforcement officer to conclude that probable cause existed or that Plaintiff's arrest was proper. Thus, there is no doubt that the defendant officers violated Plaintiff's constitutional rights when they unlawfully arrested him (and used force to effect that arrest) in the absence of probable cause.

The illegality of Plaintiff's arrest taints defendant officers' subsequent actions and renders the defendant officers liable for Plaintiff's excessive force claims. Under federal law, "[t]he Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir.2003). The evaluation of an excessive force claim therefore requires an assessment of the objective reasonableness of the defendant officers' decision to use force against Plaintiff, and in this evaluation a reviewing court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In a similar case, the Fourth Circuit concluded that law enforcement officers "violated clearly established law in using force to seize [an unarmed individual] when he had committed no crime and when they had no reason to believe he was a danger to himself or others." *Bailey v. Kennedy*, 349 F.3d 731, 745 (4th Cir. 2003). Thus, it was unreasonable and illegal for the officers to use force against Plaintiff when they attempted to effect his unlawful

arrest.[4]

In an attempt to refute the conclusion that no reasonable officer could have believed there was probable cause to arrest Plaintiff, the defendant officers point out that a magistrate approved an arrest warrant for Plaintiff. In essence, the defendant officers argue that the decision to arrest Plaintiff must have been reasonable because a magistrate approved the issuance of an arrest warrant. This argument fails; as the Supreme Court has noted, the presence of an arrest warrant signed by a magistrate "does not end the inquiry into objective reasonableness." *Id.* Instead, law enforcement officers are civilly liable in false arrest cases where, as here, "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Further, the Fourth Circuit has "repeatedly held that arrest warrants do not confer immunity if it was objectively unreasonable to conclude there was probable cause for the arrest." *Graham*, 831 F.3d at 183.[5] As explained above, it was objectively unreasonable for the defendant officers to conclude that there was probable cause that Plaintiff violated an EPO issued pursuant to Va. Code. § 19.2-152.8. Further, the magistrate in this case was misled by the criminal complaint written by Jacobs, which erroneously stated that Plaintiff had violated Va. Code. § 16.1-253.2. Accordingly, the presence of a signed arrest warrant does not alter the determination that the defendant officers violated Plaintiff's constitutional rights.

Thus, the undisputed factual record and foregoing analysis confirms that Plaintiff is

---

[4] The defendant officers also used excessive force if the claim is considered under Virginia law, where it is well-settled that a person has "the right to resist" an unlawful arrest and the government "cannot expunge that right even by showing the officers acted in good faith." *Brown v. Commonwealth*, 497 S.E.2d 527.530 (Va. App. 1998); *see also McCracken v. Commonwealth*, 512 S.E.2d 493 (Va. App. 2002).

[5] As the Fourth Circuit has recognized, Virginia law does not require that magistrates be lawyers. *See Graham*, 831 F.3d 176. Thus, it is particularly true here that an officer "cannot excuse his own default by pointing to the greater incompetence of the magistrate." *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986).

11

entitled to summary judgment on liability for his constitutional claims of unlawful arrest, unreasonable seizure, and excessive force against the defendant officers because the officers arrested him without probable cause.

## V.

Although it is clear that defendant officers violated Plaintiff's constitutional rights by arresting him without probable cause, defendant officers argue that summary judgment should be entered in their favor, and not Plaintiff's, because qualified immunity insulates the defendant officers from liability for their actions. The doctrine of qualified immunity protects state officials from civil liability under § 1983 "unless their actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As the Supreme Court has explained, qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Indeed, it is both appropriate and sensible that law enforcement officers are not held civilly liable for decisions they must make in the absence of clear legal guidance. This is not a case, however, where a lack of clear legal rules invited error on behalf of the defendant officers. The defendant officers made decisions that were both unlawful and unreasonable in light of clearly established legal authority, and the defendant officers cannot now claim qualified immunity for their indefensible actions.

A law enforcement official seeking to assert the defense of qualified immunity must show (1) that the facts, interpreted in the light most favorable to the Plaintiff, do not establish a violation of a constitutional right, or (2) that the alleged right, even if violated, was not "clearly

established" at the time of the incident. *See Pearson*, 555 U.S. at 231. As the following analysis makes clear, however, defendants cannot establish either prong of a qualified immunity defense, and thus defendants are not entitled to qualified immunity. Thus, defendant's motion for summary judgment must be denied, and Plaintiff's motion for summary judgment as to liability must be granted for the constitutional claims.

As to the first prong of qualified immunity analysis—whether the defendant officers violated Plaintiff's constitutional rights—the undisputed facts leave no doubt that defendants violated Plaintiff's constitutional rights by procuring an unlawful arrest warrant without any probable cause to arrest Plaintiff. As explained *supra*, the officers erred in concluding that Plaintiff's alleged termination of water and electricity service constituted an "act of violence" as defined in the EPO, and the defendant officers further erred in attempting to arrest Plaintiff for violating a statute wholly unrelated to the EPO issued against Plaintiff. The defendant officers violated Plaintiff's constitutional rights to remain free from unlawful arrest when they arrested Plaintiff on erroneous grounds.

The officers, who all had knowledge of both the EPO and the arrest warrant, should have recognized that Plaintiff's arrest was unlawful, for, as the Supreme Court has reiterated, "[a] reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 819. Law enforcement officers are reasonably expected to know the difference between acts of violence, which violate the EPO issued against Plaintiff, and the termination of utilities in this case, which does not violate the EPO issued against Plaintiff. The defendant officers cite no cases to support their erroneous argument that Plaintiff had violated the terms of the EPO by terminating water and electricity to Johnson's bedroom and bathroom, and no case supporting that proposition has been found. The defendant officers indisputably violated Plaintiff's

13

constitutional rights and therefore the defendant officers cannot establish the first prong of a qualified immunity defense.

The second prong of the qualified immunity analysis requires an assessment of whether the constitutional right which the government officials violated was clearly established at the time of the events at issue. This determination "must be made in light of the specific context of the case, not as a broad general proposition." *Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002) (citations omitted). Particularly relevant for this false arrest case, the Fourth Circuit has held that although "it is clearly established that the Fourth Amendment prohibits police officers from arresting individuals without probable cause," such a broad framing of the constitutional right is too generalized, and "framing the right at that level of generality would mean that the clearly established prong would automatically be met in every suit alleging an arrest without probable cause." *Graham*, 831 F.3d at 182, n. 1. Instead, the proper inquiry is to "determine whether a reasonable person in the officer's position would have known that his or her actions violated th[e] right" to be free from arrest absent probable cause. *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996).

Given the facts known to the defendant officers and the law at the time of Plaintiff's arrest, it is clear that reasonable police officers should have known they were violating Plaintiff's rights in arresting him. Plaintiff's alleged termination of water and electric service plainly did not contravene any restrictions or provisions of the issued EPO, which prohibited only "acts of violence, force, or threat." Dkt. 24-2. And the plain text of § 16.1-253.2 makes clear that the statute does not apply to EPOs issued pursuant to § 19.2-152.8 (as Plaintiff's EPO was). In addition to the unambiguous text of § 16.1-253 .2, decisions of Virginia courts confirm that a proper EPO must issue in order to qualify as a violation of § 16.1- 253.2. *See, e.g., Davis v.*

*Commonwealth*, 778 S.E.2d 557, 567 (2015). And numerous decisions of Virginia courts establish that Plaintiff was well within his rights to resist his unlawful arrest. *See, e.g.*, *McCracken v. Commonwealth*, 572 S.E.2d 493 (Va. App. 2002); *Brown v. Commonwealth*, 497 S.E.2d 527, 530 (Va. App. 1998). Thus, the defendant officers are not entitled to qualified immunity as to Plaintiff's false arrest, unreasonable seizure, or excessive use of force claims and summary judgment must be entered in favor of Plaintiff on these constitutional tort claims.

## VI.

Plaintiff's complaint also raises three Virginia state law claims, including false arrest, malicious prosecution, and assault and battery. With the exception of Plaintiff's malicious prosecution claim, Plaintiff's state law claims rise and fall with the disposition of Plaintiff's federal constitutional tort claims. As discussed below, summary judgment must be entered in favor of Plaintiff for the state law claims of false arrest and assault and battery. However, an entry of summary judgment for Plaintiff's malicious prosecution claim is inappropriate on this record, and Plaintiff's motion for summary judgment will be denied as to that claim.

Plaintiff first seeks summary judgment on his claim of false imprisonment against Irby, McCauley, and Jacobs. Virginia's common law tort of false imprisonment forbids "the restraint on one's liberty without any sufficient legal excuse." *Lewis v. Kei*, 708 S.E.2d 884, 890 (Va. 2011). As explained above, the defendant officers lacked sufficient legal excuse (i.e. probable cause) to arrest Plaintiff, and thus Plaintiff clearly prevails on his state law false imprisonment claim. Defendants again mistakenly argue that Plaintiff's arrest was reasonable because the officers had probable cause and a valid arrest warrant. As discussed above, the defendant officers had neither probable cause nor a valid arrest warrant, and thus the defendant officers cannot escape civil liability for these acts. Accordingly, Plaintiff's motion for summary judgment on the

false imprisonment claim must be granted.

Plaintiff also seeks summary judgment on his claim for assault and battery against Irby. McCauley. and Jacobs. Virginia common law defines battery as the "touching of another, willfully or in anger." *Edwards v. Commonwealth*, 779 S.E.2d 858, 862 (Va. App. 2015). Here, the undisputed record evidence establishes that all three officers willfully touched Plaintiff in the officers' effort to arrest him. Although touching a suspect is permissible to enact a lawful arrest, Virginia law "treats the unlawful arrest as an unauthorized touching, and thus a battery against the attempted arrestee." *McCracken*, 572 S.E.2d at 493. The parties agree, and the factual record demonstrates, that all three officers touched Plaintiff when they forced him to the ground as they executed the unlawful arrest of Plaintiff and that defendant officer McCauley used a taser in order to subdue Plaintiff. Thus, Plaintiff's motion for summary judgment on his state law assault and battery claim must also be granted.

Finally, Plaintiff seeks summary judgment on his malicious prosecution claim. Virginia law requires a plaintiff alleging malicious prosecution to prove "that the prosecution was (1) malicious: (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis*, 708 S.E.2d at 889. The record evidence clearly establishes the last of the three elements. First, Plaintiff's prosecution was instituted with the help of the three defendants, who were the arresting officers in this case. Second, Plaintiff's arrest and prosecution were both without probable cause. Third, Plaintiff's prosecution ended in Plaintiff's favor on both charges. First, the charge of violating the EPO was dismissed as *nolle prosequi* and second, Plaintiff was acquitted of the charge fleeing a law enforcement officer.

Yet the record evidence does not establish that the defendant officers acted with the

16

requisite malice, and thus summary judgment on this claim must be denied. Virginia courts interpret the malice element of a malicious prosecution claim as requiring "any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws. suppress crime. or see that the guilty are punished." *Hudson v. Lanier*, 497 S.E.2d 471,473 (Va. 1998). However, no direct evidence of the officers' motives exists in the summary judgment record. Although it is true that "[m]alice may be inferred from a lack of probable cause," such an inference is not legally required. *Reilly v. Shepherd*, 643 S.E.2d 216, 219 (Va. 2007). Indeed, the Supreme Court of Virginia has made clear that "the malice which is an essential element of an action for a malicious criminal prosecution is actual malice, or malice in fact, as distinguished from imputed malice, that is, malice imputed by law." *Freezer v. Miller*, 176 S.E. 159, 168 (Va. 1934 ). On this factual record, therefore, a reasonable jury could find that the officers plain disregard of the EPO' s terms and the statutory text amounts to malice on the behalf of the police officers. But a reasonable jury could also find that the officers, though unreasonable, were not malicious. Accordingly, summary judgment on Plaintiff's malicious prosecution claim must be denied.

## VII.

In sum, the defendant police officers violated Plaintiff's constitutional rights when they unlawfully arrested Plaintiff and used force to effect that arrest. The undisputed factual record shows: (1) that Plaintiff s actions could not be reasonably construed as a violation of the EPO that had issued against Plaintiff and (2) Plaintiff's arrest for a violation of a statute wholly inapplicable to the EPO issued against Plaintiff was without legal foundation and thus unreasonable. Qualified immunity sensibly protects government officials, especially law enforcement officers, who perform discretionary and essential job functions in difficult situations

and where there is an absence of clear legal authority.[8] Indeed, qualified immunity protects officers in many cases, except cases where officers acted unreasonably or knowingly violate the law. *Malley*, 475 U.S. at 341. Here, however, the defendant police officers acted unreasonably, and qualified immunity cannot provide a shield for their unlawful and unreasonable actions.

An appropriate Order reflecting the matters discussed in this Memorandum Opinion will issue separately.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
March 23, 2022

/s/
T. S. Ellis, III
United States District Judge

---

[8] For example, in *Fijalkowski v. Wheeler*, 801 F. App'x. 906 (4th Cir. 2020), the Fourth Circuit upheld a grant of qualified immunity to police officers who ordered a pool lifeguard not to jump in the pool and rescue a drowning swimmer. In doing so, the Fourth Circuit explained that "it was not clearly established at the time of the incident that delaying by up to two-and-a-half minutes the rescue of a drowning person who may have posed a danger to others violated that person's substantive due process rights." *Fijalkowski*, 801 F. App'x. at 911. However, in the instant case, and unlike in *Fijalkowski*, the law governing the defendant officers' conduct was clearly established and thus the defendant officers are not entitled to qualified immunity.