UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| MATTHEW SOUTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. #1:20-cv-1295 (TSE/JFA) |
| | ) |
| C. T. IRBY, *et al.* | ) |
| | ) |
| Defendants. | ) |

BENCH MEMORANDUM ON INADMISSIBILITY
OF EVIDENCE REGARDING EMERGENCY PROTECTIVE ORDER
and in part
MOTION FOR MODIFICATION OR CLARIFICATION OF ORDER

Plaintiff Matthew Souter files this supplementary bench memorandum regarding the inadmissibility of defense evidence or argument regarding the request for, procurement of, or alleged violation by Mr. Souter of the emergency protective order ("EPO") giving rise to the events here at issue. Part IV of this memorandum also constitutes a motion for modification or clarification of the Court's August 10, 2022 order on evidence at trial (ECF 80).

I. Since There Was no Probable Cause for Mr. Souter's Arrest,
The Particular Crime for Which he Was Arrested is Immaterial

Mr. Souter could have been wrongfully charged, without probable cause, with capital murder or spitting on the sidewalk, and in neither case could he have been constitutionally arrested nor victimized by excessive force. What matters is not the identity of the non-existent crime with which he was wrongfully charged, but the fact that it has been conclusively determined that no arrest warrant should have been procured, no arrest should have happened,

1

and no injuries attendant on the arrest should have befallen Mr. Souter. The fact that Mr. Souter was wrongfully charged with violating an EPO is not material to adjudication of damages he incurred as a result of defendants' actions.

## II. Evidence of the EPO is Unduly Prejudicial to Mr. Souter

Had Mr. Souter been wrongfully accused of spitting on the sidewalk, he would not be prejudiced by introduction of evidence that this is the reason he was wrongfully arrested. But he was charged with violating a protective order that barred him from committing physical or sexual assault on a female tenant.[1] Evidence (or even the implication) that a woman demanded "protection" from Mr. Souter is highly prejudicial to him. It does happen that women, including female tenants, are abused by men, including their landlords. Were evidence of this allegation material to the pending trial on damages, Mr. Souter would have to suffer the consequences. But it is not material, and this is all the more reason why it should be excluded from evidence. Such evidence constitutes no more than a grossly prejudicial implied slur reasonably causing the jury to wonder what Mr. Souter did that warranted issuance of the EPO by a magistrate. The Court should not permit this to happen. The Court should instruct the jury that the charge on which Mr. Souter was arrested is immaterial to his claim for damages because no probable cause existed to believe he had committed any crime.

---

[1] The order was obtained *ex parte* by a tenant on whom he had just served a notice of eviction, and who later claimed it was violated because the electricity in her room allegedly went out. Mr. Souter respectfully apprises the Court that his testimony on these matters, should it become necessary, will be to the effect that his tenant in question – who, unlike his usual long-term tenants, lived in his farmhouse for only two months – was mentally unstable, routinely drunk, destructive, and had received a notice to vacate a few days before she procured her *ex parte* EPO. He will testify, if needed, that he never lifted a finger against her and that her claims against him were contrived. She has not been listed as a witness by defendants.

III. Evidence of the EPO Will Turn a One-Day Trial Into a Three-Day Trial

The fact that given evidence will lengthen a trial is no reason to disallow it. But when that proposed evidence is both immaterial and prejudicial, the fact that it will unduly burden the Court and the jury looms significantly. Here, introduction of EPO evidence will more than double the trial testimony and turn a one-day trial into something three times that long.

* Mr. Souter will have to spend considerable time attempting to negate the negative implications of having been ordered not to assault his female tenant. He will have to testify about his 200 year-old farm house and its outmoded and precarious electrical systems[2]; about his tenant at issue and her drinking and abusive manner; about her sick cat; about his ordering her to get her cat out of the kitchen; about her cursing him in response; about serving her with a notice to vacate after several weeks[3]; and about his astonished receipt of the EPO several days thereafter. He will deny ever having lifted a hand to his tenant. But such denials are often, and often correctly, met with jury skepticism. None of this evidence bears on any issue facing the jury, even as it is immensely prejudicial to Mr. Souter.

* Absent restrictions imposed by the Court, defendants, free to address the EPO, will adduce evidence of their earnest compassion for the allegedly abused female tenant and their need to ensure her safety and well-being, etc.

---

[2]Circuit breakers were readily thrown by use of impermissible appliances (such as hot plates) in tenant rooms.

[3]His tenants generally stayed six months to a year, with one staying for 4½ years.

The result of the above will be that what should be a very brief trial about what happened on the occasion of Mr. Souter's arrest[4] will turn into a trial, *sub rosa*, of why Mr. Souter was on the receiving end of an EPO in the first place, and how this allegedly bore on what the defendants did and why.

IV. The EPO is Inadmissible as Evidence of Defendants' "Good Faith"[5]

In its pre-trial order dated August 9, 2022, ECF 80, this court ruled that the denial of qualified immunity does not by itself deprive defendants of the right to argue "good faith" in attempting to avoid or minimize the imposition of punitive damages. While Mr. Souter respectfully dissents from this view, even based on the Court's ruling defendants cannot adduce evidence of the EPO.

Evidence of defendants' "good faith" cannot be simply that they acted in conformity with that character trait in doing what they did: procuring a warrant, arresting Mr. Souter and using force to do so. Such character evidence is prohibited by FED. R .EVID. 404(a). There must be a direct nexus *between the specific conduct giving rise to their liability and the alleged good faith in which it was done*. In this case, as found by this Court, the conduct that violated Mr. Souter's constitutional rights and as to which good faith allegedly attaches is as follows:

---

[4]Mr. Souter will be his only witness, unless Def. Irby declines to stipulate to the police photograph of the laceration of his right hand probative of Mr. Souter's testimony that Dep. Irby punched him in the mouth.

[5]This portion of this memorandum may qualify as a motion for relief from the Court's August 10, 2022 order on evidence.

1. [T]he defendants plainly erred in concluding that the conduct Johnson complained of – namely, termination of water and electricity to [her] bedroom and bathroom – constituted an act of violence in violation of the EPO issued against Plaintiff . . . Given [the definition of acts of violence] in the EPO, it is clear that conduct Johnson complained of . . . plainly did not violate the EPO.

ECF 40 at 5-6.

2. [The defendants compounded their error] by seeking an arrest warrant for Plaintiff unsupported by probable cause and citing in support of that arrest warrant a statute inapplicable to Plaintiff and the EPO. . . . [T]he defendant officers erred in executing an arrest warrant which [they] knew or should have known charged Plaintiff with violating an EPO which had never been issued.

*Id.* at 6.

3. The defendants used force to effect an unconstitutional arrest.

*Id.* at 10-11.

The following, then, are the specific issues that must be the focus of any "good faith" evidence permitted by the Court.

1. How patently disregarding the plain language and definitions in the very document they were seeking to enforce was a "good faith" decision;

2. How invoking a statute that had not been used to issue an EPO against Mr. Souter, and then relying on that wrongful invocation to procure and execute an arrest warrant were "good faith" decisions;

3. How seizing, punching, repeatedly tasing Mr. Souter, and taking him to the ground, to the point of his requiring emergency medical care, all in aid of an unconstitutional arrest, were "good faith" actions.[6]

---

[6]All these actions are conceded, although Dep. Irby is not sure if he punched Mr. Souter in the mouth or just "above the chest and below the top of the head." The result appears in photographs of Mr. Souter's bloody face already of record.

If defendants are to be permitted to appeal to their "good faith," this must be with specific reference to the issues set forth above, not otherwise.[7] Specifically, defendants may not plead their good faith in reference to their concern about a tenant's alleged victimization, or their alleged virtuous state of mind throughout. For them to do so would manifestly violate FED. R. EVID. 401, 403, and 404.

### Conclusion and Request For Preliminary Ruling

The Court's ruling on these issues will significantly impact trial beginning with the undersigned's opening statement. The same is true of Mr. Souter's pending motion *in limine* (ECF 53 and 83) and his motion seeking to bar defendants from justifying their use of force (ECF 84). Mr. Souter thus respectfully requests the Court's adjudication of these matters before opening argument.

Respectfully submitted,

MATTHEW SOUTER,

By counsel

Dated: August 15, 2022

---

[7] Nor can "good faith" evidence be presented that invites the jury to allow the defendants "breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). The denial of qualified immunity flatly forecloses that line of defense. (The defendants are free to make a pre-trial proffer to the Court of "good faith" evidence that does *not* invite the jury to believe that their actions were reasonable, and thus does not do an end run around this Court's ruling that it was unreasonable, and should have been known to be unreasonable, for them to have done what they did.)

Counsel for Plaintiff

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Nickera S. Rodriguez, #95952
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com
nsr@robinhoodesq.com
SouterMatthew\Pleadings\2022-0815-2dBenchMem&MAmendOrder.wpd

Certificate of Service

I, Victor M. Glasberg, hereby certify that on this 15th day of August 2022, I electronically filed the foregoing Pre-Trial Bench Memorandum with the clerk's ECF system.

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com

Counsel for Plaintiff